Andrew Sommer to use of Mary F. Lathrop, Adminis-
tratrix of John Lathrop, Deceased, Appellant, *v.* Wil-
liam J. Gilmore, Garnishee of Ransom Rogers.

*Charge of jury—Mistake—Review.*

The Supreme Court will not reverse a judgment on a verdict where all
the testimony offered was admitted and submitted to the jury on the ground
that the trial judge made a misstatement of a fact in his charge, which
was corrected before the jury left the court room.

Argued April 10, 1895.    Appeal, No. 244, Jan. T., 1895, by
plaintiff from judgment of C. P. No. 4, Phila. Co., Sept. T.,
1870, No. 1919, on verdict for defendant.    Before GREEN, WIL-
LIAMS, McCOLLUM, DEAN and FELL, JJ.    Affirmed.

Assumpsit on a promissory note.

The facts appear in the charge of the court by ARNOLD, J.,
as follows :

" It appears that on Nov. 26, 1870, a man named Andrew
Sommer obtained a judgment against a man named Ransom
Rogers, which was afterwards assigned to John Lathrop.

" On June 26, 1875, a judgment was entered in the court of
common pleas No. 2, of this county, in favor of Ransom Rogers,
against William J. Gilmore.

" On Oct. 10, 1882, about seven years afterwards, Mary F.
Lathrop, the administratrix of John Lathrop, the owner of the
Sommer judgment against Rogers, learning of the judgment in
favor of Rogers against Gilmore, attached the debt which,
according to the records, appeared to be due by Gilmore to
Rogers.

" The case now presented for your determination is, whether
or not Gilmore owed Rogers at the time of the attachment the
amount of that judgment, and whether there is anything due
by Gilmore to Rogers to apply to the claim which Mr. Lathrop's
administratrix has against Rogers.

" It appears that about a year before this attachment, some
time in 1881, Rogers left the city, and that he has not been
back since.

" [Mr. Gilmore, who was the defendant in the suit of Rogers

against Gilmore, in which a judgment was entered, filed a peti-
tion in the court of common pleas No. 2, alleging that while the
judgment appeared to be good on its face, yet it was not, and
that the note was not given for a bona fide debt, but was given
as security to Rogers for the faithful conduct of Rogers' business
by Gilmore, in the management of the theatre at Tenth and
Callowhill streets.] [1]    Upon that petition he obtained what
is called in law a rule to show cause why judgment should not
be opened, and the defendant let in to a defense.

"Upon this rule depositions were taken—that is, the testi-
mony of witnesses was taken out of court before a commis-
sioner or notary public.    Quite a volume of such depositions
were taken, as you have seen, occupying some time, and upon
being presented to the court of common pleas No. 2, the court
opened the judgment, and awarded an issue to ascertain whether
Gilmore did owe Rogers anything.

"The case came on for trial, and on Nov. 12, 1888, a verdict
was found in favor of the defendant, Gilmore, that he did not
owe the $5,381.21, or any part of it.

"[The record of that suit has been offered in evidence, and
it shows that the issue came on to be tried before Judge HARE
and a jury, all the parties being represented; that is to say,
Rogers had a lawyer there, Gilmore had a lawyer, and the firm
of Reeve L. Knight & Sons, who were also interested in holding
the judgment, were represented in that court.] [2]

"[The case was there tried, the testimony of witnesses being
taken, and, as I said before, it was found that Mr. Gilmore did
not owe Rogers anything, and a verdict was found in his
favor.] [4]

"Notwithstanding that verdict and the judgment thereon,
the plaintiff in this suit alleged that the trial in common pleas
No. 2 was a sham trial; that the verdict was obtained by col-
lusion and by combination between Rogers and Gilmore for
the purpose of heading off attachment creditors like the plain-
tiff in this suit, and [to overcome that verdict, and to prove
that it was not a bona fide verdict rendered upon a bona fide
trial, but was obtained by collusion and combination, the plain-
tiff has offered in evidence a certain letter, written by Ransom
Rogers to Mr. David B. Taylor, dated Dec. 5, 1881].    That
was written after the judgment was entered, and seven years

before the trial of the issue in common pleas No. 2, to ascertain whether it was a good judgment or not.

" In that letter Mr. Rogers speaks of having a judgment against Gilmore. He asks Taylor what arrangement he proposes to make in regard to the judgment against Gilmore and he thinks that one half would be too liberal fee to collect it. He says that judgment is already obtained on a judgment note with a waiver, all of which is true; for at that particular time, to wit, Dec. 5, 1881, there was a judgment subsisting in common pleas No. 2. You will remember that it was entered on June 26, 1875, and was not opened until a great many years afterwards. The trial did not take place until Nov. 12, 1888, which was more than thirteen years afterwards.

" Therefore, it is submitted to you as jurors to say whether you believe, upon that letter and the other testimony, the trial, the verdict, and judgment in common pleas No. 2, that there was something due upon that judgment, or that the whole amount of it was due.

" [As I have stated to you before, when the case was tried in common pleas No. 2, three parties were represented ; Rogers, the plaintiff of record ; Gilmore, the defendant, and other attachment creditors, to wit, Reeve L. Knight & Sons. They were present, and were parties in that suit, admitted to prosecute, and were there during the trial.] [3]

" Now, if you believe upon the testimony that the trial in common pleas No. 2, which was had before a judge and a jury, at which every person at that time interested was present — if, notwithstanding that, you believe there was a fraudulent combination and collusion between Rogers and Gilmore, and that Gilmore did owe Rogers $5,000 and upwards, then you may render a verdict in favor of the plaintiff. in this suit for the amount claimed, or as much as you may find that Gilmore owed Rogers at the time of the attachment.

" If, on the other hand, you believe that the judgment note was given simply as security for Gilmore's conduct of the business of Rogers at the theatre, Tenth and Callowhill ; that after the business was turned over by Gilmore to Rogers, and the accounts settled, nothing was due by Gilmore to Rogers, and the note should have been satisfied, but was not, and that the trial in common pleas No. 2 upon the note was a fair and bona fide

trial between parties who were actually and actively litigating with each other, then there is nothing due by Gilmore to Rogers, and consequently nothing can be recovered by the plaintiff in this suit on her attachment against Gilmore.

" The main question in the case is this : Was there an actual bona fide debt by Gilmore to Rogers of $5,381.21, which this judgment note represents, or was it simply given as security for anything which might be found to be due upon a settlement of accounts ? If it was given as security and the parties settled their accounts, and found nothing due by Gilmore to Rogers, then, of course, the note itself is worth nothing.

" If, on the other hand, you believe that it represented an actual bona fide debt owing by Gilmore to Rogers ; that the trial in common pleas No. 2, which found otherwise, was conducted by combination and collusion between the parties, so that the plaintiff might lose the suit, and thereby defraud attaching creditors, and that there is enough of that money yet due by Gilmore to Rogers to pay the plaintiff's claim, to wit, about $3,000, then you may find a verdict in favor of the plaintiff for that amount. It is a pure question of fact for you to determine what was due by Gilmore to Rogers. If nothing was due, the verdict should be for the garnishee ; but if something was due, and it was enough to pay this debt, you may render a verdict that the garnishee pay the plaintiff the amount claimed ; or if there was less due, you will ascertain how much less, and out of that the plaintiff can collect part of her judgment.

" Counsel have called my attention to the statement that Reeve L. Knight & Sons were not in court at the time of the trial referred to. They were not actually present in court, taking part in the suit, but the record shows that they had petitioned the court for leave to intervene in that case, and they had a right to be present, and could have been present if they had seen fit."

Verdict and judgment for garnishee. Plaintiff appealed.

*Errors assigned* were (1–5) to portions of charge as above, quoting them ; (6–10) in giving undue prominence to defendant's testimony and in not presenting all the evidence impartially to the jury.

*J. S. Freeman* and *John F. Keator*, *O. B. Jenkins* with them, for appellant.

*John H. Shakespeare*, for appellee.

PER CURIAM, May 13, 1895:

We see no reason for reversing this case. The learned court below followed our decision when it was last here and all testimony offered was admitted. There was nothing involved in the controversy but matters of fact which had to be submitted to the jury as was done. The jury has found for the garnishee as two other juries had done before. There certainly should be an end of such litigation. We do not think the charge is fairly subject to the criticisms made upon it. The mistake in the statement as to the presence of the other creditors at the trial was fully corrected before the jury retired.

Judgment affirmed.